COHEN, J.
Kristen Hedstrom (“Former Husband”) appeals the supplemental final judgment for modification (“Judgment for Modification”) entered on August 29, 2012, which, among other things, reduced the amount he was required to pay in alimony. Former Husband argues that the trial court erred by: (1) awarding a modified amount of alimony that exceeds his ability to pay; (2) basing the modification for the entire retroactive period on his salary at the time of trial;[1] and (3) not applying the reduced amount of alimony retroactively to the date when his income was first reduced.
Former Husband was married to Debra Hedstrom (“Former Wife”) for twenty-two years. The parties’ marriage was dissolved by a final judgment of dissolution of marriage (“Judgment of Dissolution”) on March 3, 2009, which incorporated a marital settlement agreement (“MSA”) agreed upon by the parties. When the parties entered into the MSA, Former Husband was employed as an engineer, earning a gross yearly salary of just over $180,000. Former Wife, on the other hand, was working part-time in retail, grossing approximately $5,100 per year. Among other things, the Judgment of Dissolution required Former Husband to pay permanent periodic alimony in the amount of $3,750 per month.
In May 2009, Former Husband was laid off from his job. He received a severance package that included sixteen weeks of pay in the amount of $49,987.68. On June 11, 2009, he filed a supplemental petition seeking to reduce his alimony payments. Former Husband remained unemployed from May 21, 2009 until January 20, 2011. During this period, he received unemployment compensation and shareholder distributions from a company that he owned. His 2010 and 2011 tax returns indicated that his annual gross income was $61,020 and $101,022, respectively. Also during this period, Former Husband failed to pay Former Wife the required alimony, thereby accruing a substantial arrearage.[2]
*152 On January 20, 2011, Former Husband was hired by a new company at an annual starting salary of $92,500. Ninety days later, he received a raise to $102,500 annually. Former Husband’s July 2012 financial affidavit reflected that his gross monthly income was $8,539; after statutory deductions, which included alimony payments,[3] his net monthly income was $3,385. The affidavit further indicated that his monthly expenses were $4,566.
According to Former Wife’s July 2012 financial affidavit, she was earning approximately $1,000 per month working part-time in retail. Including the alimony she received, her monthly net income was approximately $2,994, which did not cover her monthly expenses.
A trial was held on Former Husband’s petition for modification in August of 2012. The trial court’s relevant findings in the Judgment for Modification can be summarized as follows. Former Husband was laid off from his job, but he received sixteen weeks’ severance pay in the amount of $49,987.68 and ninety days of job placement assistance, which he utilized. He spent a significant portion of the severance package in a reckless fashion and willfully chose to ignore his court-ordered obligations although he had the ability to pay. In 2010, Former Husband received a shareholder distribution of $74,235 and unemployment compensation in the amount of $30,307.42. Former Husband remained unemployed for approximately seventeen months until his current employer hired him on January 20, 2011. In 2011, Former Husband again received a shareholder distribution, this time in the amount of $9,616.00. Thus, for both 2010 and 2011, the trial court found Former Husband’s income to be approximately $105,000.
The court adjudged that there had been a substantial change in circumstances since the entry of the Judgment of Dissolution: Former Husband’s employment involuntarily changed and his income was substantially reduced from $180,000 per year to $102,500 per year. The court found that Former Husband had the ability to pay $2,750 per month in ongoing permanent alimony and Former Wife had a need for $2,960 per month. However, in implementing the modification, the trial court utilized inconsistent dates. At one point, the trial court indicated that Former Husband was entitled to have his alimony obligations reduced to $2,750 beginning January 1, 2010. At another point, the court ruled that the reduction was effective January 1, 2011.
The court also adjudged that there was an arrearage in the sum of $102,416.75 as of August 3, 2012. In calculating the ar-rearage, the court took into account a twenty-month retroactive reduction. The court ordered Former Husband to pay the arrearage in increments of $275 per month, plus the statutory interest.
On appeal, Former Husband first argues that the trial court erred in awarding an alimony amount that exceeds his ability to pay. A trial court’s alimony award is reviewed for an abuse of discretion. E.g., Canakaris v. Canakaris, 382 So.2d 1197, 1202-03 (Fla.1980). Under this standard, a trial court’s decision should stand unless no reasonable judge would agree with the decision. Halikman v. Halikman, 43 So.3d 913, 914 (Fla. 5th DCA 2010). We find no abuse of discretion in the trial court’s award.[4]
*153 Former Husband next argues that the court erred in basing the modification for the entire retroactive period on his salary at the time of trial and not taking into consideration the period of time when he was unemployed. He contends that he earned substantially less in 2010 than he was earning at the time of trial; thus, his alimony obligations should have been reduced to a greater extent in 2010 than 2011 and 2012. He believes that the reason the trial court did not grant a greater reduction was because it overstated his 2010 and 2011 income.
Generally, a party seeking modification of alimony obligations must prove a substantial change in circumstances that is permanent in nature. Ferguson v. Ferguson, 921 So.2d 796, 797 (Fla. 5th DCA 2006). However, a temporary modification is appropriate where the court determines that the payor has suffered a reduction in income through no fault of his own and is acting in good faith to return his income to its previous level. McIntosh v. McIntosh, 915 So.2d 742, 743 (Fla. 5th DCA 2005) (citing Dervishi v. Dervishi, 905 So.2d 932 (Fla. 4th DCA 2005)). We have held that if the party cannot prove a permanent change in circumstances — for example, where he is unemployed but seeking new employment — that party is entitled to a suspension of his payment obligations during the period of unemployment. See Bennett v. Dep’t of Revenue, 664 So.2d 33, 34-35 (Fla. 5th DCA 1995). Alternatively, rather than suspending the payment obligations entirely, the court can reduce them. See Hoffmeyer v. Hoffmeyer, 802 So.2d 1212, 1213 (Fla. 2d DCA 2002) (“The trial court’s ruling to reduce [the] alimony from $1700 to $500 provides an appropriate balance by meeting both parties’ basic financial needs while maintaining an incentive for [the payor] to seek other employment.”).
When calculating arrearage during this temporary period of reduced income, a payor’s complete inability to pay requires cessation of arrearage accrual, not mere abatement of payment. Davis v. Davis, 528 So.2d 34, 35 (Fla. 5th DCA 1988). As we explained in Davis, “[to] cause [the payor] to go deeper and deeper and deeper in debt, as the months of his inability to pay [the alimony] continue, potentially puts him in a hole from which he could never be extricated, save a win at the lottery or other bonanza.” Id. Accordingly, “[w]hen an inability to pay support alimony arises the only proper thing to do is suspend payments until the ability is restored.” Id.
In this case, the record reflects that Former Husband was laid off due to no fault of his own. His income was reduced in or around September 2009.[5] Although he was actively seeking new employment, he was not successful in obtaining employment until January 2011. Between September 2009 and January 2011, he earned substantially less than he had previously earned. Allowing arrearage of $3,750 per month, or even $2,750 per month, to accrue between September 2009 and December 2010 would be to ignore Davis.[6]
*154 Additionally, the trial court found that Former Husband’s income, for both 2010 and 2011, averaged at least $105,000 annually. This finding is not supported by competent, substantial evidence. In reaching this conclusion, the trial court relied on the fact that Former Husband received $30,307.42 in unemployment compensation during his unemployment. Instead, the evidence reflects that Former Husband did not receive any unemployment compensation in 2010. Former Husband’s uncontroverted testimony, corroborated by his tax returns, reflected that he received $1,119 in unemployment per month until November 2009. Thus, we remand for recalculation of the arrearage.
Former Husband’s last argument is that because his income was reduced beginning September 1, 2009, the trial court should have applied the modification retroactively to that date. Retroactivity is the rule rather than the exception. Acosta v. Renta, 84 So.3d 1223, 1226 (Fla. 3d DCA 2012) (citing DeSantis v. Smith, 634 So.2d 796, 797 (Fla. 4th DCA 1994)). There is a presumption of retroactivity “unless there is a basis for determining that the award should not be retroactive.” Acosta, 84 So.3d at 1226 (citing Thyrre v. Thyrre, 963 So.2d 859, 862 (Fla. 2d DCA 2007)). Trial courts have discretion to modify alimony retroactively to the date the petition for modification was filed or any date subsequent thereto. Acosta, 84 So.3d at 1226 (citing Ray v. Ray, 707 So.2d 358, 360 (Fla. 2d DCA 1998)). However, trial courts abuse their discretion by failing to grant modification retroactively to the date the petition was filed if the reasons justifying modification existed at that time. See Perdue v. Perdue, 506 So.2d 72, 73 (Fla. 5th DCA 1987).
Former Husband’s tax returns demonstrate that his total yearly income did not drop substantially until 2010, when it was reduced from $180,079 to $61,020. Thus, the trial court found that, in 2009, Former Husband “had ability to pay alimony as [originally] ordered.” Similarly, it found that Former Husband “had an obligation to pay the full amount between August 14, 2009 and January 1, 2010,” and that he “has had and continues to have, since Jan. 1, 2010, the ability to pay [a reduced amount].” Given Former Husband’s tax returns, these findings were within the court’s discretion.[7] However, the court then concluded that Former Husband was entitled to a reduction retroactive to January 1, 2011. This ruling contradicts the court’s finding that Former Husband was able to pay the full amount through 2009 and a reduced amount beginning January 1, 2010. We therefore remand this portion of the judgment for clarification or recalculation.
AFFIRMED IN PART; REVERSED IN PART; REMANDED.
LAWSON and EVANDER, JJ., concur.

. Former Husband's initial brief did not clearly state the issue; we have therefore rephrased it.

. An affidavit prepared by the Orange County Circuit Court Clerk showed Former Husband’s arrearage to be $149,471.20 as of August 8, 2012. However, the parties stipulated that he paid $35,672.36 directly to Former Wife, which was not reflected in the Clerk's calculations.

. After an income deduction order was entered against Former Husband in December 2011, he began to regularly make alimony payments in the amount of $3,503.93 per month.

. Former Husband also argues that the trial court failed to make a specific finding regard *153 ing his ability to pay. A party cannot complain on appeal about inadequate findings unless the alleged defect was brought to the trial court's attention in a motion for rehearing. Mathieu v. Mathieu, 877 So.2d 740, 741 (Fla. 5th DCA 2004) (citing Broadfoot v. Broadfoot, 791 So.2d 584 (Fla. 3d DCA 2001)). Here, Former Husband did not bring the alleged defect to the trial court’s attention in a motion for rehearing; thus, the issue was not properly preserved for appeal.

. He was laid off on May 21, 2009, but taking his severance package into account, his income was not reduced until September 2009.

. We note, however, that — unlike in Davis— Former Husband did have the ability to pay a reduced amount during this period.

. In determining that Former Husband had the ability to pay the full amount until the end of 2009, it is likely the court also considered that, soon after losing his job, he took a $6,000 trip to China and purchased an $8,500 engagement ring for his new girlfriend. During this time, Former Husband was giving Former Wife a reduced payment based on advice he received from counsel. The trial court’s characterization of this spending as reckless is reasonable.